WILLIAM AITCHESON v. GEORGE C. HUEBNER, TREAS-
URER OF WAYNE COUNTY.

*Taxes—Right of purchaser to deed—Tender of payment—Manda-
mus—Public records—Inspection—Dealing in
tax titles.*

1. *Mandamus* will not lie to compel a county treasurer to issue
   tax deeds for lands purchased by relator under section 80 of
   the tax law of 1891, where it appears by the return that,
   before the writ was applied for; the relator had accepted a
   tender by the county treasurer of the purchase money, and
   that, when he afterwards tendered it to the treasurer, the land
   had been conveyed to other purchasers.
2. The State tax land book (or statement), provided for in sections
   73 and 74 of the tax law of 1891, is a public record in the
   office of the county treasurer, and as such is subject to inspec-
   tion by any citizen, under Act No. 205, Laws of 1889, as con-
   strued in *Burton v. Twite,* 78 Mich. 363, 80 Id. 218.
3. The business of dealing in tax titles is lawful, and is·recognized
   and encouraged by the tax laws; and, while it may not be in
   good repute with some of our people, it has its uses, in stim-
   ulating the prompt payment of taxes, and does the State some
   service in this respect.

*Mandamus.* Argued February 9, 1892. Granted in
part March 18, 1892.

Relator applied for *mandamus* to compel respondent to
permit him to inspect, examine, and copy from the
State tax land book in respondent's office, and to issue
deeds to relator of certain tax lands. The facts are
stated in the opinion.

*Henry A. Chaney,* for relator.

*Gray & Gray,* for respondent.

PER CURIAM. Relator asks the writ of *mandamus* to compel respondent—

1. To permit him to inspect, examine, and copy from the State tax land book in respondent's office.

2. To issue tax deeds to him for certain lands for which, on January 15, 1892, he made payment to said respondent.

. Relator claims his right to the writ by reason of sections 73, 74, and 80 of Act No. 200, Laws of 1891. These sections are as follows:

"SEC. 73. The Auditor General shall furnish to each county treasurer in the month of February prior to the month of May, in the year in which such tax sales are held as provided in this act, a full and complete statement of all lands in his county that may have been bid in for the State, remaining unredeemed or not otherwise discharged; and the county treasurer, with the list so furnished, shall prepare a complete statement of all land bid off for taxes.

"SEC. 74. Such statement shall exhibit the aggregate amount of all sums due to the State on each description of land, including interest thereon at the rate of six per cent. per annum from the time the land was bid in to the State until the said first Monday in May, the time of said sale heretofore provided for by this act, and include lands returned by the Auditor General and the lists kept by said treasurer."

"SEC. 80. Any person may purchase any State tax lands of such county treasurer by paying therefor the amount for which the same was bid off to the State, with interest on the same at the rate of one per cent. per month from date of sale."

Under the first two sections above quoted, relator contends that the State tax land book is a public record, and upon section 80 he bases his right to his deeds.

The return of the respondent shows that, before the application to this Court for the writ, the money paid for these deeds January 15, 1892, was tendered back to relator the same day and accepted by him. He is there-

fore not entitled to the deeds, as it appears that, at the date he again tendered the money to respondent, January 20, 1892, the interest of the State in the lands had been conveyed to other persons.

It is claimed by respondent that the book which relator wishes to examine is a State book, "prepared for State purposes, used by the treasurer for State purposes; and the treasurer was merely auctioneer for the State, and not for the county." It is also contended that the relator's business is disreputable; that he is a "tax-title shark," and is therefore not entitled to the examination of this book for a "lawful purpose."

These contentions are not tenable. The book is a public record in the treasurer's office, and comes within the statute (Act No. 205, Laws of 1889). *Burton v. Tuite,* 78 Mich. 363, 80 Mich. 218.

The relator's business is lawful, and recognized and encouraged by the tax laws; and, while the business of dealing in tax titles may not be in good repute with some of our people, it yet has its uses, in stimulating the prompt payment of taxes, and does the State some service in this respect.

The writ must issue commanding the respondent to furnish to relator, under the statute of 1889, proper and reasonable facilities for the inspection and examination of this book, and for making *memoranda* therefrom, as he is entitled to the same right as any other citizen, under Act 205, Laws of 1889.

The relator will be entitled to the costs of this motion.