STATE *ex rel.* HERBERT M. DAVIDSON v. M. S. COUCH, City Manager and FRANCIS MILLS, City Clerk and Collector, City of Daytona Beach, Volusia County.

156 So. 297

Division A.

Opinion Filed August 6, 1934.

*Green & West* and *W. J. Oven,* for Relator;

*Millard B. Conklin, Leon J. C. Harton* and *H. B. Hodgden,* for Respondents.

ELLIS, J —An alternative writ of mandamus was issued

by this Court upon the petition of Herbert M. Davidson, a citizen of the City of Daytona Beach, Florida, against M. S. Couch, as City Manager, and Francis Mills, as City Clerk and Collector of the City, and individually, commanding the latter to permit, Davidson, the Relator, in person and by his duly authorized attorney or attorneys, agent or agents, representative or representatives, to make such inspection and inspections from time to time of any and all the municipal records and books of account of the City as he, the Relator, may so desire to inspect within the terms and provisions of the law.

Subsequently the writ was amended narrowing. the command to afford the privilege to Davidson in person and his duly authorized agent, J. L. Robertson, and the time for such inspection to regular office hours.

The Respondents demurred to the writ and moved to quash it. The point is made that the writ was amended informally and not by the Court. Leave was granted by the Court to amend the writ in accordance with the Relator's suggestion filed May 28, 1934.

The alternative writ takes the place of a declaration at law. See State, *ex rel.* Sunday, v. Richards, 50 Fla. 284, 39 South. Rep. 152; Merchants Broom Co v. Butler, 70 Fla. 397, 70 South. Rep. 383.

The practice has been followed for many years that the alternative writ having issued may by order of the court be amended by Relator in the manner and form as his motion suggests without the issuing of another writ. See State *ex rel* Ellis, v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 South Rep. 213.

A motion to strike the amended portions of the writ was denied on June 19th, and Respondents were allowed until June 25th to file a return.

There appears to be no order upon the demurrers to the alternative writ, but as no demurrer seems to have been interposed to the alternative writ as amended and as a return was made on June 25th, we regard the writ as amended as sufficiently stating a case requiring a return by the Respondents.

. In the decision filed by this Court in the case on May 26, 1934, State, *ex rel.* Davidson, v. Couch, 115 Fla. 115, South. Rep. 153, it was held merely that the command of the alternative writ was broader than the demand insisted upon and broader than the statute itself contemplates as an enforceable duty; that the right to make an inspection of the public records by a citizen includes the right on his part of making such inspection accompanied by a certified public accountant who is likewise a citizen of Florida entitled to make a personal inspection in his own right.

So the amended alternative writ commands Couch, as City Manager, and Francis Mills, as City Clerk and Collector, and each of them, "Individually and/or in your official capacity" to permit Herbert M. Davidson in person and by J. L. Robertson, his duly authorized agent or representative to make such inspection and inspections from time to time during regular office hours of any and all the municipal records and books of account" of the City of Daytona Beach "as he, the said Herbert M. Davidson, may so desire to inspect within the terms and provisions of the law."

The Relator moved for a peremptory writ subject to the court's order on Relator's demurrer to the return and the motion to strike certain portions of it.

The return in paragraph one denied that Davidson is a citizen of Daytona Beach as contemplated by the statute, and avers that he is not a taxpayer of the City and has

never paid any taxes during the four years period he alleges. that he has been a citizen, nor did his name appear on the tax rolls of the city as of the date of the institution of the action. Relator moved to strike that paragraph.

This Court decided that point against the Respondents. when the case was before us when the alternative writ was. quashed with leave to amend. The view expressed was that the provisions of Section 490 C. G. L. 1927, (Section 424 R. G. S. 1920), are mandatory and render the municipal books in possession of the Respondent subject to inspection by citizens of Florida. The Court said the duty is. "mandatorily imposed by Section 490, C. G. L., *supra,* upon 'those in charge of such records,' not to deny the statutory privilege to any citizens of Florida seeking to inspect same as the statute provides."

The statute is as follows: "Public records open to examination by citizens.—All State, county and municipal records shall at all times be open for a personal inspection of any citizen of Florida, and those in charge of such records. shall not refuse this privilege to any citizen."

The alternative writ alleges that Davidson is a citizen of Daytona Beach, Volusia County, Florida, and continuously has been for more than four years last past, and, while the return specifically denies that allegation, the denial is. coupled with the averment seemingly by way of explanation of such denial that Davidson is not a taxpayer of the city, never has paid taxes during the four years that he alleges. to have resided in the city and that his name has not appeared on the tax rolls of the city as of the date of the beginning of the action. Thus by way of argument, which is. not good form in pleading, the point is sought to be presented that for the purposes of a writ of mandamus to compel persons in charge of the city records to permit one

to inspect the municipal records the person seeking such privilege must be a taxpayer of the city or his name must appear as such on the tax rolls of the city. In short, he must have a justiciable interest, which the same argument assumes in such cases must be that of a taxpayer or of one whose name appears on the tax rolls of the city as such.

The major premise of such argument is unsound. The language of the statute refutes it, which accords the privilege of personal inspection of municipal records to "any citizen of Florida."

The power to enact such a law exists in the Legislature. The language of the Act is plain. There is no ambiguity in it, no occasion for interpretation of words, nor for construction of phrases or sentences. The privilege is accorded to "any citizen of Florida." It would be a work of superogation and wholly useless to undertake to point out the reason for such a statute because whatever reason may have operated upon the collective mind of the legislative body, the power was exerted by it in the enactment of the law.

A government for the people and of the people is one which the public accounts of revenue collected and expended should show such receipts and expenditures truthfully and that the duties in such matters have been honestly and efficiently discharged. To this end any citizen of the State may inquire at the only source of information and be aided in his inquiries by the use of the records in which the transactions are supposed to be recorded. It is not a question of what the citizen intends to do with the information when he obtains it. He may if he desires disseminate the information among the people by means of the press in public address, pamphlets or by the writing of a book by way of favorable or unfavorable criticism of the methods and practices of the people's servants in their positions of trust. It is

a matter of history that famous writers in England and France notably and perhaps in other countries have been the means of affecting salutary reforms by their novelistic criticisms of abuses of public powers.

The motion as to the first paragraph of the answer, therefore, was well founded.

Paragraph three of the return, which the Relator also moved to strike, sought to set up as a defense that Davidson was advised of the names and descriptions of all the official records of the city but that he has not made known to the Respondents what specific book of account or record of the City that he desired to inspect and that he has not named in the pleadings in this case the book or record he desires to examine. The averment is then made that Relator's reason for suppressing the information as to the particular book or books he desires to inspect is for "political purposes" to secure from Respondents a denial of his request and then upon such denial publish in a newspaper articles of libelous nature imputing dishonesty in the management by the Respondents of the municipal affairs.

The motion as to that paragraph is also well taken. The statute secures to any citizen of Florida the privilege of inspecting "All State, county and municipal records" and requires that such record "shall at all times be open" for such inspection. In the former opinion in this case the Court said the privilege of making a personal inspection of such records is "at any reasonable time it may be requested." That view is consistent with the holding in State ex rel. Davis, v. McMillan, 49 Fla. 243, 38 South. Rep. 666, 6 Ann. Cas. 537, in which this Court speaking through Mr. Justice TAYLOR said: "But while the public have this right, it must at all times be exercised *reasonably,* with a due regard to the rights and duties of the clerk and of other persons hav-

ing similar rights." The learned Judge quoted favorably from Day v. Button, 96 Mich. 600, 56 N. W. Rep. 3, in which the Court said: "This right does not permit the register to be unduly annoyed by a large force, or by work at unseasonable hours," etc. See also notes in 80 A. L. R. 777.

It will be observed that the statute places no restriction upon the right of inspection. All State, county and municipal records are required at all times to be open for inspection. The answer seeks to place such a restriction upon the privilege that one to whom it is accorded by the statute would be required to specify the particular book or record which he desires to examine. It is sufficient to say that the statute imposes no such limitation and it is doubtful if any rule or regulation of the office requiring it would be reasonable, because the working of the rule would depend upon the applicant's knowledge of the name of the record he desired to inspect. Under such rule one person may be required to specify the book, while another and more favored one, because of his pretended ignorance of the name of the record, might be permitted examination of all of them.

The first fifteen lines of paragraph four of the return to which exception was also taken we think should also be stricken because the pleader seeks to plead a conclusion of law instead of setting up the facts which constitute his defense. In substance the return avers that the Relator's requests have always been granted by the Respondents "when reasonable demand was made and reasonable use and examination of said records was sought by said Relator or his agents or attorneys."

It is perfectly obvious that no issue be joined upon such an averment. What standard of reasonableness was in the pleader's mind is not disclosed. The result would be that

excursions into the realm of motives actuating the Relator and conditions which the Respondents might consider irksome would entail an interminable line of evidentiary facts swelling the record to a size and multiplying the costs to a point calculated to defeat the right secured by the statute and in the end attain to no definite result.

The last lines of the paragraph are also objected to because they undertake to set up a defense which neither confesses nor avoids the material allegations of the writ.

It avers in substance that the Relator has never made a demand in person to examine the records, *non constat*, but the Relator demanded the right by written communication delivered by his agent, likewise a citizen of Florida.

Paragraph five of the return is likewise objectionable because it seeks in the first few lines to deny that the privilege was ever refused "when the same was to be reasonably exercised," and the remainder of the paragraph attacks the motive of Relator in bringing the action. It is averred that the action was brought not to obtain the enforcement of a right but to discredit the Respondent and to cast unwarranted aspersions through the newspaper, Daytona Beach News Journal, of which Relator is editor and part owner, upon the city officials and the operation of the municipal corporation.

It is essential in all pleading to set up the ultimate facts by definite and positive averment or allegation. In no other way may an issue be presented and the rights of the parties determined in a court of justice. It may be admitted that if the Relator is insincere, desires no information and is attempting to use the courts of the State to further a scheme to malign, revile, traduce falsely the Respondents to the end that some unworthy partisan political advantage may be obtained over the officers of the city government and falsely

sets up a privilege secured to him by the statute to examine the records as a ground for his request to inspect them and all the while contrives by devious methods to secure a denial of his statutory privilege by the Respondents, that the court would not lend itself and the power of the State to such a disgraceful or unworthy enterprise. We think, however, that such a defense should not be formulated in general terms of uncertain meaning, but the facts constituting such a course of dealing should be pleaded to the end that the court may determine whether the action is a mere subterfuge to justify an offensive and deprecatory charge of unfaithfulness on the part of the public officials.

Pleadings should be certain, clear and concise, and where fraud is relied on the averments should be specific and the facts constituting such fraud should be stated. See Heathcote v. Fairbanks, Morse & Co., 60 Florida 97, 53 South. Rep. 950; Huffstetler v. Our Home Life Ins. Co., 67 Fla. 324, 65 South. Rep. 1; Seaboard Air Line Ry. v. Rentz & Little, 60 Fla. 429, 54 South. Rep. 13.

Paragraph six of the return is attacked. It contains an averment to the effect that on March 27, 1934, a person named Lawton Carver, agent of the Relator and reporter for the newspaper of which Relator is editor and part owner, requested certain information of the Respondents as to the city's financial condition and were advised by Respondents that inasmuch as the newspaper by which Carver was employed had theretofore disbelieved facts and statements as to business of the city that Carver should examine the records himself, which he refused to do; that thereafter, on the same day, Carver returned to the City Hall and delivered a letter to the Respondent Couch from the Relator which was a peremptory demand by Davidson, editor, that the Respondent open the books for inspection by Carver; that Carver was accompanied by one Fred Hoegner, a pub-

lic accountant; that the Respondent then offered to comply with the request and accompanied the two representatives of Davidson to the accounting department in the City Hall . and showed the two persons the books and records and directed each employee in the department to extend the privilege of free access to the books to Carver and Hoenger in order that they might make the examination desired by Relator; that they declined to do so and derided the Respondent and said they were not interested in examining the books.

Paragraphs eight, nine and ten which are also attacked contain averments of another written demand by Davidson for the privilege of inspection of the books by Robertson; that such demand is the one referred to in the alternative writ. It is averred that Robertson had just completed an examination of the books about March 31, 1934; that the work of the office had been greatly interfered with in according the privilege to Robertson and that a repetition of such examination would further interfere with the employees and officers of the city government in discharging their duties; that Robertson had all the information then obtainable, and the averment is made that in the circumstances the demand referred to in the alternative writ which is the same as that made on April 3, 1934, was not made in good faith but for the purpose of annoying the present officials of the city government, the Respondents, and to afford the Relator an opportunity in the event of refusal of the demand to criticize, censure and condemn the Respondents and stir up personal animosity and political antagonism among the citizens of Daytona Beach.

Such facts are averred in those paragraphs which in our opinion require denial by Relator because if the averments are true the facts tend to show that Relator is not denied nor has he been denied the privilege secured to him by the

statute, but that he is merely harassing and annoying the Respondents and interfering with them in the discharge of their duties to the end of creating personal and political antagonisms and using the statutory privilege as a subterfuge to that end.

If such is true he is not making a reasonable demand but on the contrary is very unreasonable in his demands, which is a misuse or abuse of the privilege granted by the statute.

In this view of the averments of the paragraphs last mentioned the demurrer and motion to strike should be overruled and the motion for a peremptory writ denied.

The Relator is allowed ten days from the date of this order to reply to the averments contained in said paragraphs.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.